When you're ready, Mr. Shoemaker. Thank you, Your Honor. May it please the Court, Clifford Shoemaker on behalf of the appellant petitioner, in this case Cheryl Lombardi. Your Honor, this is a case where, simply stated, the special master changed the burden of proof required in the vaccine program by denying that the petitioner had proven three different diagnoses in the case before even getting to an orphan analysis. She didn't prove any of them, did she? Excuse me? She didn't prove any of them. According to the special master, she did not prove any of the three things that he alleged. But if I could, let me just talk about each of those specifically and show how requiring that elevated the burden of proof. A good example is the proof of… You've got to have an injury before we go forward at all. There was an injury. Nobody's denying that she was injured. There was an injury and nobody's… It wasn't proven, if I understand correctly. There were various theories, but never was anything proven to be an injury. No, there was no question. She had medical symptoms, problems. She wasn't well. Exactly, Your Honor. But in terms of an injury within the definition and confines of the act, which means that a vaccine caused it, this, of course, isn't a table injury. She's got to prove it, right? Your Honor, that's correct. She does not have to prove a diagnosis. She has to prove an injury caused by the vaccine. And that's what we're alleging she proved. To give you an example of how this burden of proof is elevated, let me give you a good example. One of our experts was Dr. Yehuda Schonfeld. Dr. Schonfeld is one of the leading experts in the world on systemic lupus erythematosus. He's written over 43 medical books. He's written over 130 chapters in books. He's written over 1,208 articles. And when I searched, at least 80 of them dealt with the subject of lupus. He was on the editorial board of the Lupus Journal. We get the point. But his diagnosis didn't even show up until the second hearing, right? Correct. And that often happens in cases like MS and lupus, which are progressive diseases that progress over a long period of time. It often takes time for that diagnosis to be made. The question of the diagnosis was raised early on by the doctors, but there wasn't enough evidence early on until the disease had progressed far enough to involve multiple systems where you could say definitely that there was a diagnosis. Well, her treating physicians actually didn't just say there wasn't enough evidence. They seemed to say that there was counter evidence, that it couldn't have been that. But let me explain to you why the special master's burden of proof to prove lupus went well beyond what is required by the statute. The special master relied upon Exhibit N, which is the revised criteria for the classification of lupus. And the special master said that four of the 11 criteria were not met, according to him, even though Dr. Schonfeld alleged that over six of them were met. I thought three of them were met. Well, he admitted three, but it's required for four. That's correct. However, what this article says is that if you meet four of the criteria, then you are 95% certain that the case is systemic lupus erythematosus. So the special master is holding us to a burden of proof of 95% certainty that the diagnosis was lupus, even though the diagnosis was made by the doctor who writes books like this on antibodies, on autoimmune diseases. A leading expert in the world on lupus said this is a clinical diagnosis. The reason we have criteria like this is so we can do epidemiological studies and assure that we have the best cases. And even their expert admitted in his final... Epidemiological studies are statistical analyses. They are not diagnoses of a single patient. Correct. And what you do with these criteria is you're trying to get pure cases so you can do epidemiological studies. If you meet four of the 11 criteria here, that means you're 95% certain that your diagnosis is lupus. Now, of course, we're deep into facts, which this court's not going to find. But you'd also have to deal with Dr. Kagan, who said those criteria were not met at all. Well, he's saying the criteria were not met. The special master says they weren't met because four of them weren't met. But I'm saying it's a clinical diagnosis. The world's leading expert made the diagnosis. And another expert said that there was no evidence to support that. And the fact finder made a decision contrary to your client. Now, we can't reassess the facts. We don't have those doctors in front of us. We don't have the evidence. No, but you can determine that the special master rejected the diagnosis on the basis of an article that says if you meet those four criteria, you're 95% certain. So he was holding us to a standard of 95% probability, which is not the probability required of anything else in this program. Is there a standard for meeting three out of the 11? The special master, Dr. Schoenfeld, went through it and explained in his testimony why some of the rashes did qualify, even though they were not specifically a malar rash, for instance, or this kind of a rash. He went through and explained all the different systems that were involved. One of the things that was rejected was that the nervous system was involved, even though Dr. Tornatore testified that it was involved. Another good example, if you go to the- Mr. Shoemaker, we have a situation where Ms. Lombardi first suggests that the problem is transverse myelitis. Then it's chronic fatigue. Finally, it's SLE, this precursor to lupus. Which was it? Your Honor, that's exactly the point. And let me explain something called Occam's razor. Occam's razor simply means that if you have a complex situation, and if you've seen House, you've seen him write all these things on the board. If you have a complex situation, and if you can say that one thing caused all of these problems, then that's the most likely cause. You don't go around and say, well, this symptom could have been caused by this, this could have been caused by this, this could have been caused by that. We have a situation where everything that happened to this patient was explained on the basis of being caused by a vaccine. In other cases, vaccines have been shown, the hepatitis B vaccine has been shown to prove to cause transverse myelitis, chronic fatigue syndrome, and lupus. These cases are not easy cases, they're complex cases. To give you an example of one of our other cases, the Dunbar case, the title, we won this case, entitlement, hepatitis B vaccinations, causation of various illnesses including autoimmune hepatitis, POTS, encephalopathy, lupus-like syndrome, and neuropathy. These cases are not always easy to fit into a little box of a diagnosis because you're dealing with an autoimmune or immune-mediated reaction that affects multiple parts of the body. But we're dealing with a very complex situation in other respects, too. The patient here was depressed, lost a child, and went through trauma, all of which can evince itself in certain symptomologies. How do we deal with all of this information that comes flying at us on appeal? Now you're talking about an alternate cause. If you can't even get through the Alton analysis and determine whether or not... We never made it to the Alton analysis. That's right, so we never got to the alternate cause. The government was allowed in this case to disprove our case with less evidence than would be required for an alternate cause argument. To give you another example, chronic fatigue syndrome. The special master admitted that she met all the criteria for chronic fatigue syndrome. But then he went on to say the reason he was rejecting it because there were other potential causes of her chronic fatigue. He's getting into alternate cause. He's changing, he's asking us to prove an alternate cause. He's asking us to eliminate alternate causes before he even does the Alton analysis. Does the differential diagnosis for lupus, let's start with lupus, is one of the factors whether or not there was some exposure to a toxin? No, lupus, many of these conditions we're dealing with in the vaccine program can be caused by multiple things. For instance, transverse myelitis or Guillain-Barre syndrome can be caused by viral illnesses, they can be caused by other things. So we're not dealing with something where you know if you... It's not like a virus, like you get the measles, you know the measles virus caused it. These cases are not that easy. These cases are involving where the vaccine causes the immune system to attack the person's self. Where the person gets attacked is what determines the diagnosis. If it attacks your peripheral nerves, you have Guillain-Barre. If it attacks your spinal cord, myelitis. If it attacks your brain, encephalitis. If it attacks your joints and so forth, rheumatoid arthritis. So the vaccine, the immune-mediated condition, all of our experts were saying was that all of her injuries were immune-mediated injuries caused by the vaccine. Now if you try to put them into a pigeonhole, you can't. Dr. Tornatore never said she had transverse myelitis. Dr. Tornatore said that she had incomplete myelitis. And in his last report, if you look at his very last report in the case, he doesn't mention the word transverse myelitis. He's talking about her specific symptoms being caused by the vaccine. So if you look at his last supplemental report, the word transverse myelitis isn't there. He said she had incomplete myelitis. So why did she claim TM? We didn't claim TM. We claimed that she had this incomplete myelitis that was caused by the vaccine. And that was part of her overall injury. She was injured in many ways. She had the incomplete myelitis. She had this chronic fatigue, which was caused by the vaccine. She had all the other symptoms that showed she had lupus. Lupus, when you get to lupus, that's multi-systems. That includes the nervous system. So the fact that the nervous system was involved makes the lupus diagnosis even more likely. If you look at the chronic fatigue syndrome, that's a good example. Can I ask you to respond very quickly to what the judge in this case said? The court finds the petitioner's case was fatally compromised by the fact that there was no agreement among her expert witnesses. Her contemporaneously treating physicians were in the underlying medical records. If you look at the records, the physicians and the experts, none of them could agree. That's absolutely not true, Your Honor. And I'll point that out. But treating doctors, Dr. John Campbell at the Cleveland Clinic, under his impression, said that this was a post-vaccine syndrome. Post-vaccination, he's talking about post-vaccine chronic fatigue. Dr. Joseph Kluf, infectious disease specialist, says immunological process of questionable etiology, hepatitis B vaccine, certainly possible. We have a whole section of our brief, Your Honor, that starts on page, I think, 14 or 15, that talks about all the treating doctors. So this is not a case where you have no treating doctors. There are treating doctors who are ascribing this. They're having a hard time defining it. They're having a hard time pigeonholing into some specific little box. You can't fit vaccine injuries into a neat little box. A good example- Let me ask you this. Judge Horne obviously was a little concerned about the way that the administrative judge approached this. But she said, even if you were to apply Althan, she thinks that the facts would come out in the same place. In other words, she made the finding that even under Althan, even walking through the appropriate tests, that you'd end up in the same place. Well, we don't end up in the same place because we made a primephagia case. The case was defeated, according to the special master, because he took and picked and chose and said, well, this was caused by this, this was caused by that. So he eliminated all these symptoms that could be caused by the vaccine by attributing to multiple things. If you look at the chronic fatigue syndrome, for instance, he admits that she fits the criteria for chronic fatigue syndrome. He admits that. Then he goes on to say, however, the reason she doesn't have chronic fatigue syndrome is because there are other possible causes of her chronic fatigue. Other possible causes. In other words, if the respondent's experts throw enough stuff up on the wall, some of it will stick and it can be used against us, reducing, that elevates our burden of proof. In other words, rather than saying we've made the primephagia case and making them prove the alternate cause, which is a much higher burden of proof for them, he allowed possibilities to be used to defeat something like chronic fatigue syndrome. Look at chronic fatigue syndrome. We proved it. Would you like to save some of your rebuttal time, Mr. Schroeder? Thank you. Thank you. Ms. Perlman. Good morning. May it please the court, my name is Heather Perlman. I represent, bless you, Your Honor. Excuse me. I represent the respondent in this matter, the Secretary of Health and Human Services. Under the Vaccine Act, the statute requires a petitioner to demonstrate by a preponderance of the evidence that she sustained or significantly aggravated an illness, disability, injury, or condition which was caused by a vaccine covered by the vaccine injury table. Is testimony by one medical person enough? It could be in certain circumstances, Your Honor. That was not what happened here. The testimony of petitioner's experts, when considered with all of the evidence, and there were over 100 exhibits and 13 hours of expert testimony, it simply didn't meet the standard of preponderance. In fact, there was significant evidence that Mrs. Lombardi did not have any of the three conditions. Is it correct that for every piece of evidence in favor of each of the three, there was counter evidence? I think there was a lot more counter evidence than there was in favor of the evidence. For each of the three? For each of the three. Diagnosis? Correct. Take transverse myelitis, for example. There was not one treating physician, and there have been dozens who have diagnosed Mrs. Lombardi with any type of neurological problem, let alone transverse myelitis or incomplete myelitis. None of the symptoms that she displayed shortly after the vaccine are indicative of transverse myelitis. Those were the things the special master looked at, and what he should have been looking at, because he was required to look at the evidence as a whole. What about the lupus? Sure. The lupus, as you mentioned, it came up in the second hearing. By definition, four out of 11 particular symptoms needed to be present. We certainly conceded that there were two of them that actually were. What Dr. Schoenfeld testified... For a 98% likelihood, wouldn't three seemingly create preponderance of the evidence? Your Honor, I think that's similar. Four was given for a reason. I'm not sure what that reason was, but four was given for a reason. It is probably the same reason that the American Academy of Rheumatology, who wrote these criteria, indicated very specific symptoms, like a Malheur rash. Not just any old rash. A Malheur rash is required. Not just any neurologic injury. It has to be psychosis. There's another one. Very, very specific. One can only imagine that the reason that they wrote it this way is because those are the symptoms that are indicative. There wasn't a curve. One symptom has this percent, 10% likelihood, two of them 33%, up to 98%. There's certainly nothing in the record that indicates that. Your opposing counsel points out something that jumps out from the record, which is there are repeated references to alternative causes for these things. Wouldn't it have been better for this A.J. to simply follow the test that the court has set out and apply often? If you're going to look at alternative causes, look at it at the proper point in time? I think we need to consider the context in which he raised these alternative contexts. My opposing counsel keeps going back to chronic fatigue syndrome. Chronic fatigue syndrome, by definition, requires the elimination of other causes that can cause the fatiguing illness. Putting the legal burdens aside, in order to reach this diagnosis, it is incumbent on whomever is making it to eliminate the other potential diagnoses. Our experts testified and provided literature indicating that there were at least two other conditions of vitamin B12 deficiency and osteoarthritis that could very well be accounting for all of the symptoms that Mrs. Lombardi was experiencing. You're saying it's a diagnosis of exclusion? Absolutely. That is in the record repeatedly, and it is in the special master's decision as well. But that's not true with respect to lupus. That is correct. But she didn't have lupus. Why would the special master go through the analysis to a condition she doesn't have? The example he gave, he gave it with transverse myelitis, but it's equally applicable to lupus. You can't have a logical sequence of cause and effect between a vaccine and a question mark. But you don't have to have a given diagnosis to proceed with the all of the tests. You just have to have an injury. Even a conglomeration of symptoms could be deemed a sufficient injury under the act. Isn't that right? Correct. But there was no conglomeration of symptoms here. So it's her problem that she had experts who were trying to pinpoint it, and if they had not pinpointed it, she would have been fine and been able to move forward? I don't think that was her only problem, but you raise a good point in that her experts identified these three conditions and all of their testimony was directed towards these three conditions. Is that because hepatitis B has been associated with those conditions in other cases? I am not sure why that was. I guess that's a question better asked to appellant's counsel. What I do know is that that is what they alleged and that is what they tried to prove. They did not prove the initial injury, condition, disability, illness. That is what is required. Not a diagnosis. At no point did the special master say a diagnosis was required, nor does respondent argue as such. An illness, condition, disability, or injury is required. That simply was not shown here. Does the Brockelshun case help you out? The Brockelshun case very much helps us out. Thank you, Your Honor. As this Court is aware, last year Brockelshun was decided clearly holding that an off-table petitioner who does not benefit from a presumption of causation, which is certainly the case here, must specify his vaccine-related injury and shoulder the burden of proof on causation. Identifying the injury is a prerequisite to this analysis. And this makes sense, especially in the context of often. Often requires a petitioner to show a medical theory connecting the vaccination to an injury. Cause and effect showing the vaccination was the reason for the injury. An approximate temporal relationship between the vaccination and the injury. Injury, injury, injury. We don't have an established injury. Everything else at that point is moot. Is an injury an illness, or does the injury have to bear a causal relationship to the vaccine? By definition, an injury is... She was sick. I mean, she had some problems, right? She had a multitude of complaints, certainly. They didn't amount to anything that anybody could recognize. Anything to which an often analysis could possibly be applied. So you don't even get to causation. Correct. Unlike Brokelson, which you had raised, there were two competing diagnoses there. Both were in the record, and it was just a question of which there was more evidence of. Which there was a preponderance of the evidence. We don't have that here. We have three distinct conditions against nothing. She didn't establish these three distinct conditions. Therefore, the special master had no choice but at that point to dismiss the claim. Everything else was moot. There was no evidence that the special master raised the burden of proof in any way. There is no evidence that the special master required any certainty or a single diagnosis, or required her to exclude alternative diagnoses, or agree on her diagnoses. If you look at Appellant's brief, there's not one citation to the record for that. That's because it's not there, and it simply did not happen. All the special master required was preponderant evidence that she had any of the conditions she alleged. She did not. Just to touch briefly on it, because Mr. Shoemaker sounded like he was trying to re-argue this case before this panel, as you are aware, it is the role of the special master to weigh the evidence and the factual evidence, and that is what we're talking about here. We are talking about the facts that were presented in this case. He weighed the persuasiveness of the evidence, and he found that Petitioner had not met her burden of proof, her burden to prove by preponderant evidence, that she has one of the injuries she alleges. Judge Horne found that special master's well-supported findings and well-reasoned decision were in accordance with law, and she felt that was entitled to substantial deference, and under this court's case law, that is absolutely correct. Your Honors, the special master's comprehensive 43-page decision clearly demonstrates that he thoroughly evaluated the entire record and considered all of the relevant evidence. His well-reasoned conclusions that appellant did not have transverse myelitis, chronic fatigue syndrome, or lupus were rational, reasonable, and they were amply supported by the record. These factual findings must be afforded substantial deference. After a thorough review, Judge Horne could discern no error. If there are no further questions, we ask that this court do the same and affirm the Court of Federal Claims' affirmation of the special master's decision. Thank you. Thank you, Ms. Perlman. Shoemaker, you have a little over two and a half minutes. Thank you, Your Honor. Brokelson can be differentiated, Your Honor, because that was a straightforward case where the only question was whether or not the spinal cord lesion was caused by a venous occlusion, a vascular occlusion, or an autoimmune transverse myelitis. That was the only question. This case is a case, unlike Brokelson, where Mrs. Lombardi suffered from multiple injuries. Wasn't the point of Brokelson that that had to be decided before you get to Alton? But the special master did go on and do, the same special master, went on and did an Alton analysis in that case. So he did the Alton analysis. What's going to happen here is if this case is affirmed, then this special master, who always looks for ways to rule against petitioners, is going to be armed with yet another weapon. And I want to invite you to look at the Dobrydny case. It's 04-1593V, decided by Judge Braden. And particularly, I'd ask you to look at footnote 34, where she gives a string cite to all the decisions where this special master has been overturned, because he's trying to impose different burdens of proof on petitioners in novel ways. This case is one of them. To go back to the transverse myelitis very quickly, please look at Dr. Tornatore's reports. Because Dr. Tornatore, the reason the earlier experts or treating doctors didn't find it is because they never did an MRI of the thoracic spine. Dr. Tornatore saw the case, saw the patient. He examined her. He said, this is ridiculous. Nobody ever looked at the thoracic spine. He ordered an MRI. He found evidence of atrophy. He found evidence of a prior lesion. We have the lesion. We have the test results. All these things explained. He found diminished pinprick sensation on examination. He explained why it was a myelitis. He never called it a transverse myelitis. The closest he came to that was an incomplete transverse myelitis. But what he said in his report was that she had a myelitis and he goes through all the symptoms. He said she had these injuries caused by it. Did he disagree with the other experts? No. Because if you look on page, and this is important, you look on the last page of his testimony, you will see how he says, and the fact that she has these other rheumatological things that Dr. Schoenfeld is going to testify about, that supports his opinion. So he's saying, here's my bailiwick. It's neurology. You add my neurology findings to what Dr. Schoenfeld is going to tell you about the rheumatologic, immunologic findings, they go together. They fit together. They can all be caused by the vaccine. You go to the chronic fatigue syndrome. The special master admits it's there, but how does he defeat the case? By saying that other possibilities for chronic fatigue, possibilities, not probabilities, defeat the definition, defeat the diagnosis. They don't defeat the diagnosis. They're alternate causes. But it is a diagnosis of exclusion. That particular illness is, isn't it? But... So that's different than getting to the third step of Alton, isn't it? Actually, if you read the, if you read the decision I referred to, the BRIDNI-04-1593, it's a very good description of chronic fatigue syndrome because that is a case where hepatitis B vaccine was found to cause chronic fatigue syndrome. Going to the lupus... Final thought, Mr. Shoemaker? Yes, Your Honor. Please read our, in our beginning thing on page 14 or 15, the treating doctors and what they said, because the treating doctors did support this case. Also, the fact that the SLE was diagnosed by a leading expert in the world on lupus. He doesn't need some criteria that guarantee 95 percent certainty in order to make that diagnosis. He made the diagnosis on the basis of multiple systems being involved. Thank you, Mr. Shoemaker. He said all of that was caused by the vaccines. Occam's Razor. Red Spectrum versus...